**Denise C. MALONEY and Kenneth Maloney, Appellants,**

v.

**PROGRESSIVE SPECIALTY INSURANCE COMPANY, an Ohio Corporation, Appellee.**

**No. S–10950.**

Supreme Court of Alaska.

Oct. 8, 2004.

---

Michael J. Schneider, Law Offices of Michael J. Schneider, P.C., Anchorage, for Appellants.

Gary A. Zipkin and Jonathan A. Woodman, Guess & Rudd, P.C., Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

Denise Maloney was seriously injured in an auto accident caused by a driver insured by Progressive Specialty Insurance Company. Progressive's policy provided for a maximum payment of $50,000, plus attorney's fees assessed under Alaska Civil Rule 82. Progressive acknowledged liability and damages exceeding the policy's limit—circumstances that obliged Progressive to give Maloney a policy-limits settlement offer. Progressive offered Maloney the policy's nominal limit but, since Maloney was not represented by counsel, did not offer any additional payment for attorney's fees. The question we face here is whether Progressive's offer qualified as a policy-limits offer despite failing to include any added payment for Rule 82 fees. We hold that an insurer offering to pay policy limits to an unrepresented claimant under the terms of a policy like Progressive's has no duty to include attorney's fees as part of its offer. We thus affirm the superior court's declaratory judgment for Progressive.

## II. FACTS AND PROCEEDINGS

The salient facts are undisputed. Jerry Hansen struck Denise Maloney with his car, seriously injuring Maloney. Hansen was insured by Progressive. His Progressive liability policy provided coverage of up to $50,000 per person for bodily injury, plus prejudgment interest and "limited attorney

fees assessed against the insured person" not exceeding "the amount allowed for a contested case in the schedule of attorney fees contained in Alaska Civil Rule 82."

■ Maloney wrote to Progressive, demanding to know the limits of Hansen's coverage and indicating that she might be willing to settle immediately for the policy limits. Progressive recognized that Hansen was potentially liable for the accident and that Maloney's damages easily exceeded the limits of Hansen's coverage. In these circumstances, Alaska case law makes it clear that Progressive owed Hansen a duty to extend Maloney a policy-limits settlement offer.[1] In response to Maloney's demand letter, Progressive offered to settle for the policy's $50,000 face limit plus prejudgment interest. But since Maloney did not appear to be represented by counsel, Progressive's offer did not include any additional amount for attorney's fees under Rule 82.

Soon after sending Maloney its offer, Progressive received a letter from an attorney retained by Maloney, who informed Progressive that Maloney was about to file a civil action against Hansen and attached a courtesy copy of the proposed complaint.[2] Several days later, Progressive responded with an amended settlement offer, which duplicated its original offer but included an additional sum for Rule 82 fees. In its letter extending this offer to Maloney's counsel, Progressive explained that its original offer "was made with the understanding that the Maloneys were not represented.... Now that the Maloneys[ ] are represented by coun[s]el, Progressive is prepared to extend a policy limits offer of $50,000 plus interest and *Rule 82* attorney fees."

Maloney filed her complaint and did not accept the new offer. She later amended her complaint to name Progressive as a defendant and to add a cause of action for a judgment declaring that Progressive's initial settlement offer was not a policy-limits offer. In support of this claim, Maloney asserted that Progressive's duty to extend a policy-limits offer to Maloney required it to include a payment of Maloney's projected Rule 82 attorney's fees, regardless of whether she was then represented by counsel.

Progressive and Maloney filed cross-motions for summary judgment on Maloney's claim for declaratory judgment.[3] Superior Court Judge Mark Rindner issued a written decision granting summary judgment to Progressive. The superior court recognized that Progressive had a duty to extend Maloney a policy-limits settlement offer and that this duty obliged Progressive to pay an amount equivalent to its "maximum potential liability" under the policy. But the court reasoned that, as with its liability for prejudgment interest, Progressive's liability for attorney's fees would have to be calculated on the date of the offer, so "[a]ttorneys fees would be paid only if an attorney was representing the claimant at the time the 'policy limits' offer was extended." Finding it undisputed that Maloney was not represented at the time of the initial offer, the court concluded that "Progressive rightfully did not include attorneys fees in [this] offer since [Maloney], at that time, would not have been entitled to Rule 82 attorneys fees."

Maloney appeals.

## III. DISCUSSION

■ On appeal, Maloney renews the argu-

---

1. See *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin,* 828 P.2d 745, 768 (Alaska 1992); *Schultz v. Travelers Indem. Co.,* 754 P.2d 265, 266–67 (Alaska 1988); *see also Providence Washington Ins. Co. v. Fireman's Fund Ins. Cos.,* 778 P.2d 200 (Alaska 1989).

2. The complaint actually named Denise Maloney and her husband, Kenneth Maloney, as plaintiffs. For simplicity, however, our opinion refers only to Denise Maloney and does not discuss her husband's claim, which is not relevant to this appeal.

3. Progressive initially moved to dismiss Maloney's declaratory judgment action against it, asserting that she was not insured by Progressive and so had no standing to seek a declaration of Progressive's policy limits. The superior court denied this motion, finding that Maloney's amended complaint met the requirements for standing to bring a declaratory judgment action. Because neither party discusses or challenges this ruling, we do not consider it in deciding this appeal.

ments she presented to the superior court.[4] Starting from the undisputed premise that Progressive had a duty to give her a policy-limits offer, Maloney cites language from our cases defining this duty to require that an insurer tender "the maximum limits of insurance coverage"[5] that the insurer might be required to pay under "a money judgment which might be rendered against its insured."[6] Maloney also points to cases holding that when, as here, a policy provides for payment of attorney's fees in addition to the policy's face value, the insurer must add those fees to its policy-limits offer.[7] Maloney asserts that these cases adopt a forward-looking approach—one that requires the court to determine policy limits by asking "what *could* happen in the future" instead of "what *has* happened, or *is* happening?" In Maloney's view, then, Progressive should have recognized that Maloney would likely retain an attorney if her case proceeded to trial: "A seriously injured unrepresented claimant today can become, and likely will become, a claimant with an attorney tomorrow." So regardless of whether she "happened to have retained counsel at the time of [her] settlement demand," Maloney contends, our cases required Progressive to add attorney's fees to its initial policy-limits offer.

But Maloney's arguments are unpersuasive. As the superior court correctly recognized, and as Maloney acknowledges, to determine the maximum limits of Progressive's coverage, we must look first to the policy language itself.[8] Here, as already noted, Hansen's policy expressly committed Progressive to pay "limited attorney fees *assessed* against the insured person," up to "that portion of the attorney fees *awarded* as costs *under Alaska Civil Rule 82* which does not exceed the amount allowed for a contested case in the schedule of attorney fees contained in Alaska Civil Rule 82." (Emphasis added.) On its face, then, the policy's language limits Progressive's potential liability for fees to situations in which an award could properly be assessed against its insured under Rule 82—and to amounts not exceeding the fees fixed by Rule 82's schedule for contested cases.[9]

■ Our cases uniformly hold that unrepresented litigants have no right to recover attorney's fees under Rule 82 (unless they are attorneys themselves).[10] It follows that Maloney could not have received an award of fees under that rule at the time Progressive extended its original settlement offer.

Maloney argues, though, that our cases required Progressive to determine her eligibility for fees based on what probably would have happened if her case eventually proceeded to trial. But we do not read our cases as requiring insurers to calculate their maximum liability for fees by speculating about the course of future litigation. Instead, as the superior court correctly saw, our cases required Progressive to base its offer on a present-tense—albeit *hypothetical*—evaluation of the current situation. Under this approach, Progressive needed to calculate its maximum potential liability by simply assuming that "[the case] went to

---

4. The parties agree that the issue presented involves a pure question of law and is amenable to decision on summary judgment. In considering an order granting summary judgment, we review independently, without deferring to the trial court's ruling. *Providence Washington Ins. Co.*, 778 P.2d at 203 (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985)).

5. *Schultz*, 754 P.2d at 266–67.

6. *Bohna*, 828 P.2d at 768; *Schultz*, 754 P.2d at 267.

7. *See, e.g., Farquhar v. Alaska Nat'l Ins. Co.*, 20 P.3d 577, 580 (Alaska 2001); *State Farm Mut. Auto. Ins. Co. v. Harrington*, 918 P.2d 1022, 1026 (Alaska 1996); *Schultz*, 754 P.2d at 267.

8. *See Schultz*, 754 P.2d at 267.

9. Alaska R. Civ. P. 82(a), (b) (allowing courts to award fees to prevailing parties in civil cases and fixing fees for money judgments in cases contested through trial at 20% for the first $25,000 awarded in the judgment and 10% for all additional amounts).

10. *Shearer v. Mundt*, 36 P.3d 1196, 1198 (Alaska 2001); *J.L.P. v. V.L.A.*, 30 P.3d 590, 599 (Alaska 2001); *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173, 1181 & n. 12 (Alaska 1993); *Gates v. City of Tenakee Springs*, 822 P.2d 455, 463 (Alaska 1992).

trial and received an adverse verdict"[11] *as of the date of its offer.* Here, because Maloney was apparently not represented on the date of the original offer, she had no right to expect, and Progressive had no duty to offer, a payment of Rule 82 fees in addition to the nominal policy limit.

Maloney nevertheless insists that public policy weighs against this reading of our cases and favors her own proposed approach, instead. Maloney asserts that her forward-looking approach would promote judicial consistency by upholding existing authority. Yet this argument assumes that Maloney has correctly interpreted our cases—an assumption that we have rejected. Maloney further asserts that her proposal would foster finality and certainty by avoiding the need for insurers to speculate about whether a particular claimant is represented. But this argument disregards the countervailing disadvantages of Maloney's proposed rule—a rule based on speculation about the likelihood of future representation that would routinely pay unrepresented claimants for attorney's fees they have not actually incurred.

Maloney next asserts that if third-party claimants were required to reveal the status of their representation, they would be saddled with unprecedented contractual duties toward another party's insurer—an anomalous and unfair result, according to Maloney, because we have consistently recognized that an injured third-party claimant owes no contractual duties to the insured party's insurer. Yet, requiring a third-party claimant to disclose the fact of legal representation before being reimbursed for attorney's fees hardly implies a "contractual duty" toward the insurer; it simply reflects the claimant's usual responsibility to inform the insurer of the damages being claimed.

Last, Maloney insists that "Progressive's proposed rule invites massive inequity" because it is destined to "reward those who are litigation-minded enough to immediately retain counsel" and "will penalize the less litigious—those who prefer to stand on their own." But Maloney's policy argument inaccurately characterizes the effects of the approach she opposes, for we fail to see how the denial of fees to an unrepresented litigant who has not actually incurred any fees can be fairly described as "penalizing" the claimant. In any event, we see no sound reason to expect that claimants who would otherwise remain unrepresented would secure legal representation just to recover the partial reimbursement of fees allowed under Rule 82.

We thus reject Maloney's policy arguments and follow the course prescribed by our cases.

## IV. CONCLUSION

In summary, then, our cases support the conclusion that, by undertaking to pay coverage up to $50,000 plus limited attorney's fees as assessed under Civil Rule 82, Progressive did not obligate itself to extend an offer to pay attorney's fees to a claimant like Maloney, who appeared to be unrepresented at the time of Progressive's initial offer. Because Maloney's policy arguments do not compel a different conclusion, we AFFIRM the superior court's judgment declaring Progressive's initial settlement proposal to be a policy-limits offer.

---

**11.** *Farquhar,* 20 P.3d at 580; *Tucker v. United Servs. Auto. Ass'n,* 827 P.2d 440, 441 n. 3 (Alaska 1992).