*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID J. MCCARTER, JR., | ) | |
| | ) | Supreme Court No. S-14640 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-07-01070 CI |
| v. | ) | |
| | ) | O P I N I O N |
| DEBORAH A. MCCARTER (n/k/a | ) | |
| DEBORAH A. VALDEZ), | ) | |
| | ) | No. 6794 - July 5, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Richard W. Postma, Jr., Law Offices of Dan Allan & Associates, Anchorage, for Appellant. Annmarie Billingsley, Foster & Rogers, LLC, Fairbanks, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.     INTRODUCTION

This is an appeal from a judgment enforcing a property settlement agreement that had been earlier incorporated into a dissolution decree. The appellant claims that the superior court failed to make findings required by statute, erred in failing to vacate ambiguous provisions of the agreement or to allow its modification, and erred in rejecting his defenses. We affirm the superior court's judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

David J. McCarter, Jr. and Deborah A. McCarter (now known as Deborah A. Valdez) married in 1988 and filed for dissolution in February 2007. Their dissolution petition incorporated a property agreement ("the Agreement") that provided, among other things, that David would pay Deborah for her equity in a business, Dave McCarter Enterprises, Ltd., "in the amount of $2,000 per month for 320 months." The Agreement further states, "Princip[al] amount is $300,000 at 5% interest due March 1, 2007 with 10 (ten days) grace. No penalty for early payoff of principal balance." In April 2007 a superior court magistrate determined that David and Deborah understood the Agreement and were agreeing to it voluntarily, and the superior court thereupon issued a dissolution decree in which the Agreement was incorporated.

A few months later, in July 2007, David and Deborah entered into a new agreement entitled "General Release and Purchase Agreement between Deborah Valdez and Dave McCarter Enterprises, Ltd." ("the Release"). The Release purported to release David and the business "from all actions, claims, demands, or damages," to "cancel[] all previous contracts and agreements," and to "outright purchase[] the note of $300,000.00 in the dissolution of marriage between [David and Deborah]." In exchange for this general release, David was to pay Deborah $15,000 in cash, pay off the loan on her vehicle, extend the time by which Deborah was required to remove his name from the title of their marital residence, and pay Deborah $100 per month "until $39,000.00 is paid, no penalty for early payoff[.]" A handwritten addition, apparently initialed by both parties, provided, "Failure to meet any terms or conditions above by Dave McCarter or Dave McCarter Enterprises LTD[.] results in return or reverts to original dissolution agreement."

### B. Proceedings

#### 1. 2008 motion for order to show cause

In June 2008 Deborah filed a motion for an order to show cause. Her motion did not mention the Release but alleged that David was about $8,000 in arrears on his monthly payments since the dissolution. Deborah claimed that because David defaulted, he should "pay her the entirety of the money [the $300,000 due under the Agreement] in one payment." David responded by relying on the Release, contending that he had made all the payments that it required "until March 2008 at which time the business failed and is currently filing bankruptcy"; he alleged that he was filing for personal bankruptcy as well. His response also asserted that "the [b]usiness is valued far less than originally thought." Deborah filed a reply in which she conceded the existence of the Release but asserted that David had not met its terms either, meaning that the Release's handwritten reverter clause had taken effect and returned the parties to the original Agreement.

David's bankruptcy triggered an automatic stay of proceedings on Deborah's motion. In August 2009 the superior court held, with Deborah's consent, that her motion was moot because she had presented the same issue to the bankruptcy court, where it was scheduled to be tried in an adversary proceeding.

#### 2. 2010 motion for judgment

Deborah filed a motion for judgment in superior court in October 2010, asserting the same claim she had made in her 2008 motion for order to show cause and explaining that the bankruptcy action had been dismissed without prejudice. David failed to respond, and in November 2010 the superior court granted Deborah's motion. David was then allowed to file a late opposition in which he asserted a number of defenses, and the court vacated its order granting Deborah's motion and scheduled an evidentiary hearing.

The superior court heard evidence and argument over three days in July 2011 and issued a written decision in November. The court rejected David's argument that he was entitled to relief from the Agreement pursuant to Alaska Civil Rule 60(b), on grounds that he had waived such relief, and it determined that the interpretation and enforcement of the parties' obligations were governed by contract law instead. The court held that the Release's reverter clause took effect when David missed the payments that the Release required, and that the Agreement therefore controlled. The court found that the Agreement was ambiguous in that the monthly payment schedule ($2,000 per month for 320 months) did not match the stated principal and interest ($300,000 at five percent). Resolving the ambiguity, the superior court found that the parties' inclusion of a 320-month payment schedule was a mistake due to the haste with which they drafted the terms, and that what they intended was that David pay Deborah $300,000 in monthly payments of $2,000 at five percent annual interest until paid in full; the total amount due to Deborah was thus $471,869.47. The court rejected what it termed David's "unclean hands" defense, i.e., that he should be excused from performance on grounds that Deborah's actions in filing suit against him had caused his bankruptcy; the court found that there was no causal connection between Deborah's conduct and David's financial problems. Lastly, the court held that the Agreement did not allow for acceleration of the principal and that Deborah was entitled to judgment only for the amounts past due.

David filed a motion for reconsideration, which was denied. David now appeals.

## III. STANDARD OF REVIEW

We review for abuse of discretion the superior court's enforcement of a property settlement agreement incorporated in a dissolution decree.[1] Abuse of discretion exists when a decision is "arbitrary, capricious, manifestly unreasonable, or . . . stem[s] from an improper motive."[2] The superior court, not this Court, has the duty to assess credibility and weigh conflicting evidence.[3] We review its factual findings for clear error.[4]

We review questions of law de novo.[5] We decide de novo "whether relief requested by a former spouse constitutes enforcement or modification of a property settlement agreement."[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion In Granting The Motion For Judgment.

David contends that the superior court, in granting Deborah's motion, abused its discretion in two respects: first by failing to make findings required by AS 25.24.230, and second because, after finding ambiguity in the Agreement, it

---

[1] *Morris v. Horn*, 219 P.3d 198, 203 (Alaska 2009) (citing *Horchover v. Field*, 964 P.2d 1278, 1281 (Alaska 1998)).

[2] *Id.* at 203-04 (quoting *Collins v. Arctic Builders*, 957 P.2d 980, 981 (Alaska 1998)) (internal quotation marks omitted).

[3] *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999).

[4] *Id.* at 599.

[5] *Morris*, 219 P.3d at 204 (citing *Hopper v. Hopper*, 171 P.3d 124, 128-29 (Alaska 2007)).

[6] *Id.* at 203 (quoting *Krushensky v. Farinas*, 189 P.3d 1056, 1060 (Alaska 2008)) (internal quotation marks omitted).

interpreted the ambiguous provisions rather than vacating them. We find no abuse of discretion.

## 1. Alaska Statute 25.24.230 does not govern Deborah's motion for judgment.

Alaska Statute 25.24.230 requires a trial court to make factual findings about the fairness of any agreements that the parties seek to incorporate into their final decree of dissolution. David relies on these statutory requirements to assert that the superior court, when considering Deborah's motion to enforce judgment, should have made factual findings as to whether the former spouses "underst[ood] fully the nature and consequences of their action," whether the Agreement "fairly allocate[d] the economic effect of dissolution," and whether the Agreement was "free from coercion."[7]

David made this statutory argument for the first time in his motion for reconsideration, and it is therefore waived.[8] We review it for plain error[9] and find none. The statute's requirement that the court make factual findings is limited to the grant of a final decree of dissolution and "other relief *as provided in this section*"; it is irrelevant to subsequent enforcement of the decree.[10] We have repeatedly held that the superior

---

[7] *See* AS 25.24.230(a)(1), (3), and (4); AS 25.24.230(b)(1), (3), and (4).

[8] *See Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1155 (Alaska 2009) ("[W]e will not consider an issue raised for the first time in a motion for reconsideration.").

[9] *See Fernandes v. Portwine*, 56 P.3d 1, 9 n.27 (Alaska 2002) ("[W]aiver will not be found where an issue raises plain error." (citing *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection Inc.*, 32 P.3d 346, 355 n.29 (Alaska 2001))). An obvious mistake creating a high likelihood of injustice constitutes plain error. *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 436 (Alaska 2012) (quoting *Duffus v. Duffus*, 72 P.3d 313, 319 (Alaska 2003)).

[10] *See* AS 25.24.230(a) (emphasis added).

court does not have statutory authority to modify terms of incorporated property agreements.[11] "The provisions of a decree adjudicating property rights, unlike provisions for child support, child custody or alimony, constitute a final judgment not subject to modification."[12] "[I]f a party to a property settlement seeks relief from a dissolution decree into which the settlement is incorporated, the party must request relief under Rule 60(b)."[13] Absent such relief, an agreement that has been incorporated into a final dissolution decree is a contract and will be interpreted pursuant to ordinary principles of contract law.[14] In short, the factual findings required by AS 25.24.230, while necessary to the issuance of the final decree, are irrelevant to its enforcement in a subsequent proceeding.

David also relies on AS 25.24.230(e), which requires a court to "deny the relief sought in a petition filed under AS 25.24.200 – 25.24.260 if the court does not make the findings required under (a) – (c) of this section." Again we find no plain error, because Deborah did not seek relief in a petition filed under the dissolution statutes; she sought to enforce a final judgment.

---

[11] *See, e.g.*, *Morris v. Horn*, 219 P.3d 198, 204 (Alaska 2009); *Burrell v. Burrell*, 696 P.2d 157, 164 (Alaska 1984).

[12] *Keffer v. Keffer*, 852 P.2d 394, 396 (Alaska 1993) (quoting *Allen v. Allen,* 645 P.2d 774, 776 (Alaska 1982)) (internal quotation marks omitted).

[13] *Morris*, 219 P.3d at 204; *see also Burrell*, 696 P.2d at 164 (holding that " 'the provisions of a decree adjudicating property rights are modifiable only to the extent that relief may be obtained from any other final judgment' " (quoting *Allen*, 645 P.2d at 776)). Rule 60(b) provides that "the court may relieve a party . . . from a final judgment" for a variety of reasons such as, but not limited to, mistake, excusable neglect, newly discovered evidence, fraud, and discharge. Alaska R. Civ. P. 60(b).

[14] *Knutson v. Knutson*, 973 P.2d 596, 600 (Alaska 1999).

**2. The superior court was not required to vacate ambiguous provisions.**

David argues that the superior court erred in failing to vacate the portions of the agreement that it found to be ambiguous. He also contends that the superior court in effect amended the parties' agreement in violation of AS 25.24.220(g), which addresses hearings on petitions for dissolution and allows the court to amend the parties' written agreements "only if both petitioners concur in the amendment in writing or on the record." The cited statute, governing the proceedings during which a dissolution decree is issued, is irrelevant to Deborah's motion for the reasons given above. And in any event, the superior court did not amend the Agreement; it simply interpreted it under contract principles, as was required under our case law.[15]

As with any contract, the goal in interpreting a financial agreement "is to give effect to the reasonable expectations of the parties."[16] This means that the court must attempt to resolve ambiguities.[17] In doing so it should examine the language of the disputed provisions, "relevant extrinsic evidence, and case law interpreting similar provisions."[18] This process, properly applied, leads a court not to the amendment of the parties' agreement but to the implementation of the agreement that they intended all along.

The superior court found the provision on David's payments to be ambiguous because it was open to several reasonable interpretations: whether the parties

_____

[15] *Id*.

[16] *Keffer*, 852 P.2d at 397.

[17] *Hartley v. Hartley*, 205 P.3d 342, 346 (Alaska 2009) (quoting *Zito v. Zito*, 969 P.2d 1144, 1147 n.4 (Alaska 1998)).

[18] *Knutson*, 973 P.2d at 600 (quoting *Keffer*, 852 P.2d at 397) (internal quotation marks omitted).

intended monthly payments of $2,000 for 320 months (regardless of the total sum paid); monthly payments of $2,000 until the principal amount of $300,000 plus five percent interest had been paid (regardless of the number of months this required); or monthly payments of $1,699.13, which over 320 months would equal $300,000 plus five percent interest. As required, the superior court determined the parties' expectations by looking to case law, relevant provisions in the agreement, and the parties' negotiations. The superior court rejected as not credible David's contention that the 320-month period was intended to give him 80 months of grace, i.e., 80 months when he was entitled to skip payments entirely. The superior court found credible Deborah's testimony that the 320-month period was the result of hasty drafting, that the parties' negotiations focused instead on the amount of the monthly payment, and that they agreed on $2,000 because it was what she needed to meet her monthly expenses.

The superior court was correct, as a matter of law, in its decision to apply principles of contract law to its interpretation of the Agreement. The record amply supports the superior court's finding of ambiguity, and we find no clear error in its findings on the parties' reasonable expectations. We see no reason to disturb the superior court's resolution of these issues.[19]

### B. The Superior Court Did Not Err In Refusing To Modify The Dissolution Agreement.

#### 1. David was not statutorily entitled to modification.

In another argument based on the dissolution statutes, David relies on AS 25.24.240(b), which provides that a decree of dissolution "may be modified or enlarged as prescribed by AS 25.24.150 – 25.24.170." David directs us in turn to AS 25.24.160(a)(4), which he contends gives grounds for modification when a party

---

[19]    Neither party appeals the superior court's calculation of the amount entered in the final judgment, and we do not consider the issue.

breaches a property agreement. David contends that the superior court erred when it failed to consider the statute's list of factors [20] and to allow him to modify the Agreement in response to Deborah's motion to enforce it. But we have squarely addressed and rejected the argument that section 160(a) applies in circumstances like these:

> Alaska Statute 25.24.160(a) provides the statutory authority for a court to adjudicate property rights. However, AS 25.24.160(a) does not authorize a court to dispose of assets on a piecemeal basis where, as here, the parties' property rights have been purportedly adjudicated and incorporated into a final judgment. As this is not an initial

---

[20] Those factors are:

(A) the length of the marriage and station in life of the parties during the marriage;
(B) the age and health of the parties;
(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;
(D) the financial condition of the parties, including the availability and cost of health insurance;
(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;
(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;
(G) the circumstances and necessities of each party;
(H) the time and manner of acquisition of the property in question; and
(I) the income-producing capacity of the property and the value of the property at the time of division.

AS 25.24.160(a)(4)(A)-(I).

adjudication of the parties' property rights, relief may be granted only within the parameters of Civil Rule 60(b).[21]

Again, in the absence of a Rule 60(b) motion for relief from judgment, the superior court's task was to interpret and enforce the Agreement by reference to principles of contract law, which it did.

### 2. The superior court did not clearly err in finding that David waived any right to relief under Rule 60(b).

David argues that his reliance below on the statutory factors in AS 25.24.160(a) was the substantial equivalent of a motion for relief from judgment under Rule 60(b)(6), and he apparently contends (though his argument is not entirely clear) that the court erred in failing to grant him relief under Rule 60(b)(6) based on the "technicality" that David had not sought such relief.

David never filed a Rule 60(b) motion to set aside the Agreement. When the superior court first granted Deborah's motion for judgment as unopposed, David cited Rule 60(b)(1), (3), and (6) in support of his request to stay the order. The request to stay was mooted by the court's decision to allow David to file a tardy opposition to Deborah's motion. His opposition relied on bankruptcy law and on the dissolution statutes to support his argument that he was entitled to modify the Agreement. At trial, the superior court advised David's counsel that if he was "arguing that the entire property settlement should be set aside and the marital estate reconfigured and rebalanced, . . . you need to file a Rule 60(b) motion and I need to know what section of Rule 60(b) you're relying on." An extensive discussion followed, in which the judge several times reiterated his understanding that the parties were seeking not a modification of the Agreement under Rule 60(b) but rather a finding of whether the contract had been breached, using "contract interpretation principles and the reasonable expectation of the

---

**21**    *Lowe v. Lowe*, 817 P.2d 453, 456 (Alaska 1991).

parties at the time they entered into the contract and extrinsic evidence thereof." David's counsel repeatedly agreed with this analysis.

Apparently having second thoughts, David's counsel submitted a letter after the first day of trial pursuant to Alaska Civil Rule 77(*l*) citing to supplemental authority, including provisions of the dissolution statutes and cases granting relief from dissolution decrees under Rule 60(b)(6). David still did not bring a Rule 60(b) motion, however, and Rule 77(*l*) is not a substitute for substantive briefing or motion practice.[22] In closing arguments counsel for both parties addressed Rule 60(b), with Deborah's counsel presenting various reasons why David had no valid claim for modification under the Rule and David's counsel for the first time contending expressly that David was entitled to relief under Rule 60(b)(6).

Based on this history, however, the superior court found in its written order that "[t]o the extent that David seeks Rule 60(b) relief from judgment, he has waived it in this motion practice." It concluded that it would be unfair to allow David to raise Rule 60(b) "mid-hearing" given his reliance, up to that point, on only the dissolution statutes as the basis for modification.

We review the superior court's factual finding that waiver has occurred under the "clearly erroneous" standard.[23] The superior court's finding of waiver was firmly grounded in the procedural history of the case and was not clearly erroneous.

---

[22] *See* Alaska R. Civ. P. 77(*l*) (providing that "the letter may not contain argument or explanations"); *cf. Wing v. GEICO Ins. Co.*, 17 P.3d 783, 788-89 (Alaska 2001) (holding that it was error for court to accept affidavit purportedly submitted as supplemental authority under Civil Rule 77(*l*), since the Rule "only provides for submission of citations to legal authorities that come to the attention of a party after that party's memorandum has been filed").

[23] *Sengul v. CMS Franklin, Inc.*, 265 P.3d 320, 324 (Alaska 2011) (citing *Miscovich v. Tryck*, 875 P.2d 1293, 1302 (Alaska 1994)).

**3.     The superior court did not allow Deborah to modify the agreement.**

David contends that he was treated unfairly because the superior court, while denying him Rule 60(b) relief, "effectively granted [Deborah] Rule 60(b)(6) relief by excusing her from her obligations under the [d]ecree to transfer real estate and refinance debts." We find no merit to this argument. The parties presented no arguments about Deborah's reciprocal obligations under the Agreement and the superior court did not rule on them.

**C.     The Superior Court Did Not Err In Rejecting David's Frustration Defense.**

**1.     The court did not err in deciding the defense as depending on proof of wrongdoing by Deborah, since that is how David presented it.**

One of David's primary defenses to payment under the Agreement was that his financial difficulties were caused in large part by Deborah's own conduct. He contended that she "killed the golden goose" by filing the 2008 motion for order to show cause and demanding acceleration of the principal due, because this conduct made it impossible for him to get the credit necessary to keep his business afloat. The superior court labeled this an "unclean hands" defense and rejected it on the facts, finding that Deborah had committed no wrongdoing because David's decision to file bankruptcy was unrelated to any conduct of Deborah's.[24] The court noted (1) that David's last payment to Deborah was in April 2008, several months before she filed her motion for order to show cause; (2) that David later attested in an affidavit that he had been unable to make payments because of an economic downturn; and (3) that in July 2008, in opposing Deborah's motion for order to show cause, David asserted that his business had failed

---

[24]     The first element required of an unclean hands defense is that the other party have "perpetrated some wrongdoing." *Cook v. Cook*, 249 P.3d 1070, 1082 (Alaska 2011) (quoting *Knaebel v. Heiner*, 663 P.2d 551, 554 (Alaska 1983)).

in March 2008, prompting his bankruptcy.  Given this sequence of events and the fact that "the sole evidence supporting David's claim is his testimony," which the court found "lacking in credibility," the court found that David was "not excused from performance of his dissolution agreement under the doctrine of unclean hands."

On appeal David frames this defense as one more properly characterized as "frustration of purpose," a defense available under contract law and one that the superior court should not have limited by the requirement that David also prove unclean hands.  David argues that when his business failed, "the fundamental, underlying assumption of the dissolution agreement [was] destroyed," citing *Schofield v. Schofield*[25] and *Juelfs v. Gough*.[26]  But both of those cases were decided on Rule 60(b), not contract law, grounds.  And the superior court decided the issue in this case as David consistently framed it below:  as one that hinged on proof of wrongdoing on Deborah's part.[27]  Though relying on the dissolution statutes (which are not controlling, as explained above), David argued in his opposition to Deborah's motion for judgment that, by

---

[25]  777 P.2d 197, 200-02 (Alaska 1989) (affirming superior court's grant of Rule 60(b) relief where underlying assumption of dissolution decree awarding marital residence to husband was that he would care for the children, and custody later changed to wife).

[26]  41 P.3d 593, 597 (Alaska 2002) (affirming superior court's grant of Rule 60(b) relief where underlying assumption of dissolution decree was that couple would be able to cooperate in sharing custody of the dog, but proved unable to do so).

[27]  Frustration of purpose is a defense that does not involve fault by either party.  *See, e.g.*, *Gold Dust Mines, Inc. v. Little Squaw Gold Min. Co.*, 299 P.3d 148, 160 (Alaska 2012) ("Under this defense, performance is excused if, without fault of either party, an implied condition of the contract is not met." (citing *Merl F. Thomas Sons, Inc. v. State*, 396 P.2d 76, 78 (Alaska 1964))).  By contrast, the unclean hands doctrine requires wrongdoing.  *See, e.g., Knaebel v. Heiner*, 663 P.2d 551, 554 (Alaska 1983) (explaining that the defense requires proof that the party "perpetrated some wrongdoing" and "that the wrongful act related to the action being litigated" (citing ZECHARIAH CHAFEE, JR., SOME PROBLEMS OF EQUITY 1 (1950))).

analogy, "[i]f this were a business dispute between partners under ordinary principles of contract law, [Deborah's] efforts to drive [David] and Dave McCarter Enterprises into bankruptcy would operate as an affirmative defense known as 'frustration of purpose.' " David's attorney made a few vague references to a "frustration" defense at trial, but he asserted consistently that it was based on Deborah's wrongdoing.

The court thus decided the issue as David had presented it, as one requiring a determination of whether Deborah had committed any wrongdoing and, if so, whether it was her wrongdoing that caused the business to fail. A "frustration of purpose" argument that is independent of Deborah's alleged wrongdoing was not asserted below and is therefore waived.[28]

## 2. The superior court's findings are not clearly erroneous.

Finally, David contends that in analyzing his "frustration of purpose" and "unclean hands" defenses, the superior court failed to consider his testimony that Deborah had violated the Agreement herself in 2007 by failing to timely sign over title to a parcel of real estate which David could have leveraged for cash and by failing to transfer some debts out of David's name, which would have improved his credit.[29] David argues that these failures "caused him to file for bankruptcy." But David's testimony does not make that causal link, and the superior court was not obliged to infer it. The record contains no other evidence to corroborate David's claim that this conduct on Deborah's part contributed to his financial downfall. The superior court is given

---

[28]     *See State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 ("Failure to argue a point constitutes abandonment of it." (citing *Lewis v. State*, 469 P.2d 689, 691-92 n.2 (Alaska 1970))).

[29]     Deborah testified that she signed the deed as soon as she was asked.

particular deference for factual findings based on oral testimony,[30] and even absent that deferential standard, we find no clear error here.

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[30]    *See, e.g.*, *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).